# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

SOLAS OLED LTD.,

                             *Plaintiff,*

     v.

LG DISPLAY CO., LTD.,
LG ELECTRONICS, INC., and
SONY CORPORATION,

                             *Defendants.*

Case No. 6:19-cv-00236-ADA

## <u>SOLAS'S REPLY CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

I.     **DISPUTED TERMS FOR '137 PATENT**.................................................................... **1**

   A.   "gradation current" and "gradation signal" terms (claims 10, 16, 36, 37, 39) ...........................1

   B.   "through a data line . . . through the data line . . ." (claims 10, 36)........................................5

   C.   "before" ('claim 10) / "after" (claim 36).......................................................................6

II.    **DISPUTED TERMS FOR '891 PATENT**.................................................................... **8**

   A.   "a third thin film transistor . . ." (claims 1, 3) ..............................................................8

   B.   "current measuring" (claims 1, 3) ..............................................................................9

   C.   "located at a same side" (claim 3) ..............................................................................9

III.   **DISPUTED TERMS FOR '068 PATENT** ..................................................................**11**

   A.   "formed on . . . along" / "connected to . . . along" (claims 1, 13).....................................11

   B.   "patterned" / "patterned together" (claims 1, 13)..........................................................12

   C.   "signal lines" (claims 1, 13).....................................................................................14

   D.   "feed interconnections" (claims 1, 10, 12, 13, 17) .......................................................15

## TABLE OF EXHIBITS AND ABBREVIATIONS

| Ex [1] | Document Description | Abbreviation |
|---|---|---|
| 1 | Declaration of Richard A. Flasck in support of Solas's opening claim construction brief | Flasck. Decl. |
| 2 | U.S. Patent No. 7,907,137 | '137 patent |
| 3 | U.S. Patent No. 7,432,891 | '891 patent |
| 4 | U.S. Patent No. 7,573,068 | '068 patent |
| 5 | Parties' joint revised list of terms/constructions dated March 6, 2020 | Joint Chart |
| 6 | Microsoft Computer Dictionary (3rd ed., 1997), definition of "signal" | MS Dict. |
| 7 | McGraw-Hill Dictionary of Scientific and Technical Terms (4th ed., 1989), definition of "data transmission line" | McGraw-Hill |
| 8 | Merriam-Webster Dictionary (avail. at www.merriam-webster.com, accessed Feb 2020), definitions of "along" and "together" | Merriam-Webster |
| 9 | Dictionary.com (avail. at www.dictionary.com, accessed Feb. 2020), definitions of "along" and "together" | Dictionary.com |
| 10 | Defendant LG Display's petition for *inter partes* review in IPR2020-00177 on the '891 patent | '891 IPR Pet. |
| 11 | Defendant LG Display's expert declaration by Dr. Hatalis in *inter partes review* in IPR2020-00177 on the '891 patent | '891 IPR Decl. |
| 12 | U.S. Patent No. 5,106,652 | '652 patent |
| 13 | U.S. Patent No. 5,981,317 | '317 patent |
| 14 | U.S. Patent Appl. Pub. No. 2002/0101172 | '173 app. pub. |
| 15 | U.S. Patent No. 7,250,722 | '722 patent |
| 16 | Declaration of Richard A. Flasck in support of Solas's responsive claim construction brief | Flasck Resp. Decl. |
| 17 | US Patent App. Pub. 2004/0239596 | Ono |
| 18 | Excerpts of the April 9 and 13, 2020 deposition transcript of Douglas R. Holberg | Holberg Dep. |

[1] Exhibits 1–15 submitted with Solas's opening claim construction brief (Dkt. 68-2 to 68-16). Exhibits 16–17 submitted with Solas's responsive claim construction brief (Dkt. 70-1 to 70-2). Exhibits 18–19 submitted with this reply brief.

| Ex [1] | Document Description | Abbreviation |
|---|---|---|
| 19 | Excerpts of the April 14, 2020 deposition transcript of Richard A. Flasck | Flasck Dep. |
|  | Declaration of Douglas R. Holberg in support of Defendants' opening claim construction brief (Dkt. 67-2) | Holberg Decl. |
|  | Declaration of Douglas R. Holberg in support of Defendants' responsive claim construction brief (Dkt 71-2) | Holberg Resp. Decl. |
|  | Solas's opening claim construction brief (Dkt. 68) | Solas Br. |
|  | Solas's responsive claim construction brief (Dkt. 70) | Solas Resp. |
|  | Defendants' opening claim construction brief (Dkt. 69) | Def. Br. |
|  | Defendants' responsive claim construction brief (Dkt. 71) | Def. Resp. |

Even a cursory review of Defendants' constructions shows they are not the plain meaning of the disputed terms. Rather they are lengthy, litigation-driven proposals containing parentheses and negative limitations. Defendants seek to construe "current measuring" as "measuring actual current (not voltage)." And instead of the word "before," Defendants prefer the eight-word phrase "earlier in time (not at the same time)." This approach is fundamentally improper. The Court should not rewrite clear terms using artificial and extraneous baggage.

Defendants try to justify their constructions using the familiar guise of "interpretation" in the "context" of the specification and prosecution history. But Defendants point to nothing that constitutes clear and unmistakable disclaimer—even according to their own expert. Their expert studied the specifications and prosecution histories but provided ***no opinions*** finding lexicography or disclaimer. *See* Holberg Dep. at 68:18–70:3. This is fatal to Defendants' position because disclaimer must be determined from the perspective of a POSITA. *Blackbird Tech v. ELB Electronics*, 895 F.3d 1374, 1378, (Fed. Cir. 2018) ("We look at *what an ordinarily skilled artisan would understand about claim scope* from reading the prosecution history.").[2] And without any adequate showing of disclaimer, Defendants' constructions must be rejected.

# I.   DISPUTED TERMS FOR '137 PATENT

## A.   "gradation current" and "gradation signal" terms (claims 10, 16, 36, 37, 39)

Solas responds to the first three disputed phrases together. This is because they involve overlapping and closely related claim language: generating a "gradation *current*" and a "gradation *voltage*" as the relevant "gradation *signal*." The parties agree that these terms—and the "current" claim construction disputes that center on them—are "closely tied." Def. Br. at 9.

Defendants' responsive brief and the recent deposition of its expert Dr. Holberg confirms

---

[2] All emphasis added unless otherwise noted.

another thing: Solas's position on all three terms is the only legally and practically correct one. To begin with, Defendants now confirm that "current" has a plain meaning—and that the patent **claims use that same plain meaning**. Defendants' responsive brief concedes two main points First, it concedes that "Solas agrees that 'a gradation current having a current value' *must be a current*," so we should all now agree to dispel the false and irrelevant notion that this term requires a construction because Solas plans to point to a voltage to satisfy it in its infringement case. It enthusiastically does not. Second, it concedes that both parties agree that "*current and voltage are related but different* electrical phenomena." Def. Resp. at 2. And Defendants' expert added a third, related concession—that the patent claims use the same meaning of "current" that was "well known" to a POSITA. *See* Holberg Dep. at 34:24–35:3 ("current" is a commonly understood term in the art and used in the patents the same way).

These three now-undisputed points alone confirm the patentee's chosen claim language for the "gradation *current*" term cannot—as a matter of law—be changed. And it is wrong add Defendants' chosen language, with its confusing parentheticals, which have no basis in the intrinsic record: "gradation *current (not a voltage)*." Where, as here, a term like "current" is used as its plain meaning, courts should not replace it with different language. *Thorner v. Sony*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012) ("we do not redefine words. Only the patentee can do that.").

There is more. Dr. Holberg the risks of jury confusion and mischief that Defendants' proposed change to the claim language, if adopted, would introduce to our trial. Chief among them is the very real risk that a juror may get confused that the gradation *current* in Solas's infringement might not qualify as a "current" under Defendants' construction, because it necessarily has a voltage associated with it and which caused it to exist. *See* Holberg Dep. at 32:17–33:4 ("A: *You cannot get a current without a voltage; that is correct.*"). And removing any doubt, Dr. Holberg

admitted that the parenthetical "(not voltage)" adds nothing to the term. *See id.* at 36:23–37:2 ("Q: Can you identify a material difference between 'current (not voltage)' and just the word 'current'? A: ***No; they would both be currents***."). This proves that it can only create harm, with zero benefit.

This point is even more clearly applicable true for Defendants' follow-on attempt to do the same for the "gradation *signal*" term. On this issue, Defendants briefs now confirm another critical point, which is dispositive of the disputes concerning "gradation *signal*" and their intertwined dependent-claim indefiniteness defense regarding "gradation *voltage*." That is: Defendants do dispute that its proposal to also replace the admittedly plain "gradation signal" term in the independent claim with "gradation current (not voltage)" ***excludes embodiments*** in the patent.

Nor could Defendants dispute this, as Solas demonstrated in its two previous briefs. *See* Solas Br. at 9–23; Solas Resp. at 6–8. Defendants' response to this only exposes the fatal defects in its construction. On the critical point about excluding the embodiments, Defendants *ignore* most of these embodiments and focuses *on only figure*, Fig. 9. In other words, Defendants have no response to the point that it excludes most embodiments. Even as to Fig. 9, all they can show is that the express description in the specification in col. 22 alone does not expressly mention the "gradation voltage." But this is not surprising, as Fig. 9 and col. 22 are not from the "detailed description" of "the non-light emitting" operation. And regardless, this is a far cry from anything that could enable supporting that pervasive "gradation signal" from all the claims.

Regardless, that Defendants do not—and cannot—dispute that its construction of "gradation signal" excludes most embodiments in the patent is dispositive. Indeed, there are few, if any, stronger rules of claim interpretation available under controlling law, which makes clear that a construction that excluded preferred embodiments is "***rarely, if ever, correct.***" *SanDisk Corp. v. Memorex Prod., Inc*., 415 F.3d 1278, 1285 (Fed. Cir. 2005)

Lacking any support, Defendants contends that this distortion of the patent is actually "correct" because all claims require that every gradation signal be a gradation current. Def. Resp. at 3, 6-7. But one look at the claims proves this false. Defendants' merely ignore the role of the "light emitting" and "non-light emitting" periods recited in the claims themselves. Per the specification, the independent claims introduce the "gradation current" being generated as the "gradation signal" and the dependent ones generate the gradation voltage" as the gradation signal." Put simply, Defendants change the clear claim language to require that the "gradation signal" always be a gradation current. If anything, this claim language suggests the opposite, because if a "gradation signal" is necessarily a "gradation current," there would be no reason to use ***both terms*** in the same claims. If the surrounding language actually imposes the requirement Defendants suggest, there is no need to redundantly burden "gradation signal" with that requirement as well.

Defendants' remaining reason also does not support excluding embodiments. They say that the file history should allow it to exclude so many embodiments because the patentee clearly and unambiguously disclaimed all voltages from any claimed "gradation signal." Def. Resp. at 4–5. But the record does not support this. Even the single sentence they crop from the file history makes clear that, consistent with the specification, the patent merely stated that the "<u>gradation current</u> . . . <u>to perform a light emitting operation</u>" is assigned "<u>as a gradation signal</u>" in the independent claim. That sentence cannot be read to exclude the many embodiments that teach the gradation signal being a "<u>voltage</u>" during the "<u>non-light emitting</u>" period, as the dependent claims recite.

But Defendants avoid one more point: saying a "current" is not a "voltage" cannot be a disclaimer in any event. Again, to quote Defendants themselves, all parties agree that voltage and current are different concepts. And last but not least, even a cursory review of that file history makes clear that the suggestion that its patent claims were allowed for this one reason is wrong.

And Defendants' expert admitted this during his deposition. *See* Holberg Dep at 199–205.

Finally, as the parties' briefing makes clear, once this error is corrected, the corresponding error in Defendants' manufactured and flawed indefiniteness claim also falls. Consistent with the plain language of the claims and the repeated teachings of the patent specification, the independent claims require a "gradation current" as the gradation signal during the light-emitting period and the dependent claims require a gradation voltage as the gradation signal during a non-light emitting period. It really is that basic. For his part, Dr. Holberg, despite reviewing the patent and offering other opinions, offers ***no opinions*** that a POSITA would not understand the scope of these dependent claims with reasonable certainty. This stands in contrast to the considerable evidence provided by Solas's expert. *See* Flasck Decl. ¶¶ 74–81.

At bottom, Defendants' proposals to add the "not voltage" carve-out is contradicts the claims and specification and is legally incorrect—and removing that error exposes the baseless nature Defendants' argument that claims 15 and 39 are indefinite.

B.    **"through a data line . . . through the data line . . ." (claims 10, 36)**

Defendants' construction requires supplying, detecting, applying to be performed though "the ***same*** data line." But that language never appears in the claims or specification. If the applicants intended to assign functions to a particular data lines, it could have claimed a "first" data line, "second" data line, etc.—a convention used in the dependent claims. *See* '137 pat., cl. 34 (reciting "first," 'second," and "third" switch circuits and describing particular functions involving the "first" switch circuit). That claims 10 and 36 are not written this way suggests that the recited functions are not limited to the "same" data line or a specific "first" data line.

As to the specification, Defendants' reliance on exemplary features of embodiments is legally insufficient. *See Elkay Mfg. v. Ebco Mfg. Co.*, 192 F.3d 973, 977–78 (Fed. Cir. 1999)

(specification did not limit claims to "a single feed tube for liquid and air" even though all figures showed a single feed tube and no figures or text described separate feed tubes). Fig. 16's depiction of one data line for a pixel is "one example" according to an "embodiment." *See* '137 pat. at 8:46–49. This feature is reflected in dependent claims 16 and 17, which recite "a *single* data line provided in correspondence to the display pixel." In contrast, claims 10 and 36 do not recite "a single data line," much less require each pixel connected to only one data line.

As to the prosecution history, the applicants never characterized the claims as limited to using the same data line or a single data line. The applicants distinguished Ono because it used a "***grounding*** line"— not "a ***data*** line." *See* Solas Resp. at 12–13. Holberg Dep. at 208:25–209:12.

### C.   <u>**"before" ('claim 10) / "after" (claim 36)**</u>

Defendants double-down on their shadow constructions and now unabashedly argue that "before" and "after" really mean "without any overlap in time." Def. Resp. at 12. Defendants' interpretation amounts to a ***negative*** limitation that prohibits any possible overlap in time—no matter how infinitesimal. Of course, this is not the plain meaning of "before" and "after." None of Defendants' dictionary definitions say without any overlap in time. Def. Br. at 13, n. 11.

The applicants could have claimed "without any overlap in time" or claimed that the first process "ends" before the second process "begins." The applicants did neither and chose the words "before" and "after." The Federal Circuit indulges "a 'heavy presumption' that claim terms carry their full ordinary and customary meaning[.]" *Omega Eng'g, v. Raytek.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The Court should not rewrite the words "before" and "after" differently from what the applicants wrote and the examiner allowed.

Defendants' restrictive interpretation is also unsupported and incorrect. Claim 36 recites "supplying [a gradation current], ***after*** the drive element *holds the voltage*." There is no reason

why the drive element cannot continue holding the voltage when the system supplies the gradation current. Indeed, this is exactly how the timing diagram in Fig. 9 works, where the voltage is held (threshold voltage Vth13 held on capacitor C) ***during the time*** the gradation current is supplied. The "holding" period (in yellow) substantially overlaps with the "providing" period (in red):



'137 pat. at Fig. 7 (cropped), 21:16–61, 22:33–48. The providing is *"after"* the holding simply because it begins after the holding begins—regardless of how much overlap. Defendants' "without any overlap in time" construction excludes the embodiment in Fig. 9 cannot be correct.

Defendants call before/after "the same requirement in reverse." Def. Br. at 13. Thus, if "after" carries its full ordain meaning, so must "before." Defendants' arguments do not show any special redefinition of "before." Defendants' rely on a timing diagram (Def. Resp. at 12) that shows the compensation voltage ending at the same instant the gradation current begins. This is precisely Solas's point. Regardless of any overlap (which would be immaterial), the compensation voltage begins before the gradation current begins. Defendants' argument that there cannot be any overlap because they "share the same data line" (*id.* at 13) is based on a false premise, as discussed in the previous term, and regardless not probative about the meaning of "before."

Finally, Defendants resort to mischaracterizing Mr. Flasck's declaration. *Id.* at 13. Of course, Mr. Flasck repeatedly explained in declaration and deposition that "before" and "after" allow for some possible overlap in time. Flasck Decl. ¶¶ 89–92; Flasck Dep. at 147:14–148:1. Defendants' construction inconsistent with how a POSITA would understand these terms.

## II.   DISPUTED TERMS FOR '891 PATENT

### A.   "a third thin film transistor . . ." (claims 1, 3)

The last portion of claim 1 begins with "a third thin film transistor during driving of its gate" and is 98 words long. Under Defendants' interpretation, the words "during driving of its gate" would modify the ***entire*** 98-word portion because it is not separated by semicolons. But there is no support that a modifier must apply to all nouns and verbs before hitting a semicolon. This is especially true where the modifier ("during driving of its gate") is about a particular subject ("a third thin film transistor") and the actions it performs ("taps" and "supplies"). Regardless of semicolons, the applicants repeated "during driving of [the] gate" each time it intended to: once for the third transistor and again for the diode, but omitted it for the CMVR circuit.

The specification also contradicts Defendants' requirements. As Solas's expert Mr. Flasck explains, the specification describes an embodiment where the claimed "providing" by the CMVR circuit occurs whether or not the third transistor is being driven. Flasck Resp. Decl. ¶¶ 14–15. Defendants' expert, Dr. Holberg, admitted he failed to consider this embodiment, as his opinions were limited to a different embodiment. *See* Holberg Dep. at 108:6–16 ("Q: when you analyzed the figure of the '891 patent, you did not analyze a different embodiment where [T3] is controlled by a separate drive conductor, right? A: ***No, I did not analyze that***.").

Defendants' cited cases do not support their position. In *Affinity Labs*, the patentee—like Defendants here—argued that the modifier at the beginning of a third clause also modified the fourth and fifth clauses. *Affinity Labs*, 856 F.3d 902, 906–07 (Fed. Cir. 2017). The Federal Circuit rejected this narrow interpretation, finding that the modifier was only about the third clause and not tied to the remaining clauses. *Id.* at 907. The Federal Circuit never held that semicolons are the only way to determine separate clauses. *Id.* And in *3Com*, the court held that two recited functions

(comparing and generating) without *any* punctuation suggested they were part of the same means-plus-function term. *3Com v. D-Link Sys.*, 473 F. Supp. 2d 1001, 1012 (N.D. Cal. 2007). The court never held that semicolons, as opposed to commas, are the only way to separate functions.

### B.      "current measuring" (claims 1, 3)

The dispute here is virtually the same as the central issue in the first '137 patent disputes, where Defendants also attempt to inject the "(not voltage)" phrase into the clear claim term. And it fails here for the same reasons. Defendants' again attack a strawman. Solas wholeheartedly agrees that "'current measuring' does not mean 'voltage measuring.'" Def. Br. at 15.

But again Defendants do not dispute that "current" or "current measuring" has a plain meaning. It argues that the file history somehow clearly leads to only one reasonable conclusion: that its importation is required. Not so. The statements in the specification and in the file history that Defendants cite are fully consistent with—and say nothing beyond what is required by—the claim language itself. They simply say that measurement of a current is required. They do not exclude anything that measures a current, simply because it might also measure something else. Certainly, there is nothing in the specification or file history that meets the standard of "clear and unmistakable" disavowal of some forms of current measurement.

If anything, Defendants' attempt to incorrectly import the limitation here—for a different patent with a different specification and a different file history—only exposes the flaws in their argument and their results-oriented approach. Apparently, almost any statement in a file history can be used to show disclaimer.

### C.      "located at a same side" (claim 3)

Defendants essentially take the term and replaces the words "located at" with "electrically connected to." But as Dr. Holberg admitted, the inventors never redefined location to mean

electrical connection. Holberg Dep. at 108:25–109:4 ("Q: "Do you believe that the inventors redefined the term 'located at' to mean 'electrically connected to'? A: Yeah. I didn't make any – in my declaration, ***I didn't offer that the term was redefined***."). Defendants' construction is unsupported. As to Solas's construction, the only disputes are "layers" and "physically located."

*Layers*: It is undisputed that the driving circuit is formed into layers. *See* '891 pat. at 2:28–30. Even Dr. Holberg opined that "***all*** integrated circuits consist of various layers that overlay each other to form the device or component." Holberg Decl. ¶ 94; *see also* Holberg Dep. at 112:20–113:2 (a POSITA would understand the recited driving circuit consists of layers). Defendant LGD adopted the same understanding in its IPR petition, when it annotated a figure showing "the ***layers*** comprising the driving circuit." Solas Br. at 21 (quoting '891 Pet. at 64). LGD further argued that the layers "can all be located on the same physical side of the OEL layer." *Id.*

*Physical Location*: Mr. Flasck provides detailed analysis showing that all driving circuit elements must be physically located on the same side to ensure the claimed condition that "no contacts must be guided through a semiconductor material of the diode." Flasck Resp. Decl. at ¶¶ 18–25. Defendants' expert Dr. Holberg could not dispute them. In discussing a scenario where driving circuit elements are located on both sides of the diode, he could not explain how it would be *possible* for the elements to be connected *without* having a contact hole through the OLED layer. *See* Holberg Dep. at 116:10–3. Thus, Mr. Flasck's technical opinions are unrebutted and Defendants' attorney argument cannot show otherwise.

As to the file history, Dr. Holberg reviewed it but had no opinions about lexicography or disclaimer. *See* Holberg Dep. at 108:17–110:21. Indeed, the consistent theme of the applicants' statements is that the physical layering of elements is a necessary aspect of the invention. *See* Def. Ex. 15 at 5; Def. Ex. 11 at 7–9. They never said physical location is not required.

## III.   DISPUTED TERMS FOR '068 PATENT

### A.   "formed on . . . along" / "connected to . . . along" (claims 1, 13)

Unable to justify their construction that requires that limits "along" to be *over the entire length*, Defendants resort to wild mischaracterizations of Solas's infringement position. Solas does not contend that "along" covers something that is "formed on" or "connected to" only at a single "arbitrary point." Rather, Solas correctly construes "along" based on its plain and ordinary meaning of "over the length or direction of."

One core dispute is that Defendants imply that "over the length of" really means "over the *entire* length." Solas's addition of "direction of" makes clear that connections along portions of the length would be sufficient, and need not cover the entire length from beginning to end. On this point, Defendants' implication of "entire length" is untenable. Even Defendants' cherry-picked dictionary definitions all give examples of "walked along a path," "we hiked along a trail," "along a road." *See* Def. Br. at 22. And as a matter of basic English usage, this does not *require* going along the path, trail, or road continuously from beginning to end. Rather it means going in the direction of the path/trail/road, i.e., some portion of the length.

In the responsive brief, Defendants mischaracterize the claim by saying it requires "one physical element" to be formed on/connected to "a second element." Def. Resp. at 20. This is wrong because, as Mr. Flasck, already explained, the claims are discussing interconnections between two *pluralities* of elements. *See* Flasck Resp. Decl. ¶¶ 27–32. Defendants' "surplusage" argument (to the extent understandable") fails for this simple reason.

In his deposition, Defendants' expert Dr. Holberg undermined the positions advanced by Defendants on this term. He repeatedly testified that "along" could be satisfied by going over the entire length *or merely a portion of the length*. Holberg Depo. at 131:24–133:8, 133:25–134:7,

135:16–18. He also agreed that the purported "purpose" of minimizing resistance or voltage drops that Defendants point to are not found in the claims. *Id*. at 148:5–6, 148:21–149:10

B.    **"patterned" / "patterned together" (claims 1, 13)**

Defendants separately construe "patterned" and "patterned together" even though they are always part of the same claim term. Defendants do so to add yet another artificial limitation and to advance its litigation-driven true construction: "formed in *a single layer at the same time*." Of course, such a narrow construction is unsupported. The '068 patent uses "patterned together" to describe elements formed in different layers and at different times. And the plain meaning of patterned contradicts Defendants' constructions for both terms.

*"Patterned"*: The plain meaning of "patterned" is not limited to a single layer, as confirmed by prior art patents that describe patterning multiple layers. *See* Solas Br. at 25 (citing '652 and '317 patents); Flasck Decl. ¶¶ 116–20. These references show how persons of ordinary skill use "patterned" and so is a reliable guide as to its plain meaning. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1585 (Fed. Cir. 1996) ("prior art documents . . . are more objective and reliable guides [than expert testimony]"). Defendants concede that these references use "patterned" broadly but imply that the '068 patent uses a special, narrower definition. This is wrong. Both sides' experts agree that "patterned" is a known term of art and the '068 patent uses it consistent with its meaning in the art. *See* Flasck Decl. ¶¶ 116–17; Holberg Decl. ¶ 114.

That meaning is Solas's construction: formed in one or more layers. Tellingly, Defendants do not identify a single prior art document that defines patterned as limited to "a single layer." Although Defendants rely on Dr. Holberg's textbook, it never uses the term "single layer" or implies such a definition. *See* Holberg Dep. at 163:23–164:10. Under Defendants' construction, it would be impossible to say that a two-layer structure is "patterned." That cannot be right.

Defendants make various arguments about the specification (Def. Resp. at 22–23), but none are correct. First, the specification clearly states that the drain layer can be two or more layers and that it is "patterned." Solas Br. at 25–26. This alone contradicts Defendants' construction and other examples where the drain layer might be one layer are irrelevant. Second, Defendants' block quote (Def. Resp. Br. at 22) is inapposite because the drain layer is a different layer from the "single conductive film." Defendants' own figures show the drain layer structure (in blue) on top of the single conductive film (in yellow). *See id.* at 23. That the conductive film is one layer does not mean the drain layer must be. Third, the specification has other examples of patterning multiple layers including: patterning supply lines and scan lines (Flasck Resp. Decl. ¶¶ 40–45), and patterning coincident vertical walls (Flasck Decl. ¶¶ 23–25). Fourth—and fundamentally—there is a heavy presumption that "patterned" carries its full plain meaning. And nothing in the specification is a clear disclaimer of claim scope that that limits "patterned" to a single layer.

*"Patterned Together"*: Defendants' construction for "patterned together" depends on their construction for "patterned." This is because, as Dr. Holberg testified, multiple layers cannot be formed "at the same time." *See* Holberg Dep. at 158:24–6 (agreeing that "by definition" a first layer and second layer would not be patterned "at the same time"). Because "patterned" is not limited to a single layer, Defendants' construction for "patterned together" must also be rejected.

The parties agree that "patterned together" is not a known term of art. The parties also agree that the proper construction should reflect the conventional, customary meaning of "together" in English. *See* Def. Resp. at 25. But the error with Defendants' construction is that it cherry-picks one narrow meaning of "together"—simultaneous in time—and excludes all other possible meanings. *See* Merriam-Webster (twelve definitions); Dictionary.com (five definitions, *none* as "simultaneous"). This meaning is also *contradicted* by the '068 patent. The claims and

specification expressly use "patterned together" to describe supply lines and scan lines that are formed in different layers and at different times. *See* Solas Resp. Br. at 26; Flasck Resp. Decl. ¶¶ 43–44. That this embodiment is not shown in the figures is irrelevant. A preferred embodiment can be disclosed in the written description and certainly in the claims.

Solas's construction—patterned to fit together—is plain meaning of "together" in English in the context of the '068 patent. The most common definitions of "together" invoke a spatial relationship, e.g., "union," "proximity," and "into a unified or coherent structure." *See* Merriam-Webster; Dictionary.com. This makes sense in the '068 patent, which is all about circuit elements and layers arranged to form a display circuit. Solas's construction simply reflects that elements "patterned together" are formed in close spatial proximity and designed to fit together within one or more layers. Solas's construction is consistent with every embodiment and is correct.

**C.    "signal lines" (claims 1, 13)**

Defendants' argue that their construction should be adopted because of the presumption that different claim terms have different meanings. But that argument fails for the simple reason that under Solas's construction, the terms *do* have different meanings. A line that simply connects a battery to a circuit meets the agreed construction of "supply lines" as "conductive lines carrying a current or voltage." It does not meet Solas's construction of "signal lines."

Defendants' cases do not support their attempt to import a limitation from the specification. In *Wi-LAN*, the adopted construction of maintaining *multiple* "specified connections" was firmly grounded in the claim language itself. Nothing in *Wi-LAN* suggests that features from the specification having nothing to do with the plain language should be imported. *VirnetX* is likewise inapplicable. There, the parties agreed that the disputed term "secure" had no plain meaning in the context of the patent and must be defined by the specification. *VirnetX, v. Cisco Sys.,* , 767 F.3d

14

1308, 1317 (Fed. Cir. 2014). Here, all parties *agree* that "signal" *has* a plain meaning. *See* Holberg

Dep. at 56:16–57:16 ( "signal" is "commonly used in the art"); Flasck Decl. ¶ 130.

### D.     "feed interconnections" (claims 1, 10, 12, 13, 17)

Defendants incorrectly argue that because the phrase "feed interconnections" does not

appear in a dictionary and is not a "term of art," it must be limited to the examples in the

specification. Def. Resp. at 29. Phrases can have perfectly well understood plain meanings, even

if they do not appear in dictionaries. "Oak desk" may not appear in Webster's, but that does not

mean it has an idiosyncratic meaning beyond the meanings of the words within it. Mr. Flasck

opines that "feed interconnections" has a plain meaning. Ex. 1, Flasck Decl. ¶ 132. Dr. Holberg

simply states that he has not seen the term, not that he does not understand it to have a plain

meaning. Holberg Decl, ¶ 119. But Dr. Holberg conceded that both "feed" and "interconnections"

have plain meanings in the relevant art. Holberg Dep. at 186:2–187:13, 187:24–188:8.

Defendants' cases do not support a narrowing construction. *3M* and *Intervet* simply state a

general proposition of claim construction that courts should understand terms "by reference to the

specification." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir.

2013); *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010). Neither limits claims to

examples in the specification. Indeed, in *Intervet*, the patentee had discovered a type of virus and

had coined it "porcine circovirus type II." *Id.* at 1285. Even for this highly technical and

unquestionably coined term by the inventor, the court *did not* limit the term to the examples

provided in the patent. *Id.* at 1287–88. The *MyMail* case is inapplicable because the parties in that

case agreed that "network service provider" had no meaning apart from the patent. *MyMail, Ltd.

v. Am. Online, Inc.*, 476 F.3d 1372, 1376 (Fed. Cir. 2007). The dispute was over what the

specification disclosed, not on whether the claims should so limited. *Id.* at 1377.

Dated: April 24, 2020                           Respectfully submitted,

                                                */s/ Neil A. Rubin*
                                                Marc Fenster
                                                CA State Bar No. 181067
                                                Reza Mirzaie
                                                CA State Bar No. 246953
                                                Neil A. Rubin
                                                CA State Bar No. 250761
                                                RUSS AUGUST & KABAT
                                                12424 Wilshire Boulevard, 12th Floor
                                                Los Angeles, CA 90025
                                                Telephone: 310-826-7474
                                                Email: mfenster@raklaw.com
                                                Email: rmirzaie@raklaw.com
                                                Email: nrubin@raklaw.com

                                                Sean A. Luner
                                                CA State Bar No. 165443
                                                Gregory S. Dovel
                                                CA State Bar No. 135387
                                                Jonas B. Jacobson
                                                CA State Bar No. 269912
                                                DOVEL & LUNER, LLP
                                                201 Santa Monica Blvd., Suite 600
                                                Santa Monica, CA 90401
                                                Telephone: 310-656-7066
                                                Email: sean@dovel.com
                                                Email: greg@dovel.com
                                                Email: jonas@dovel.com

T. John Ward, Jr.
TX State Bar No. 00794818
Claire Abernathy Henry
TX State Bar No. 24053063
Andrea L. Fair
TX State Bar No. 24078488
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606
Telephone: 903-757-6400
Email: jw@wsfirm.com
Email: claire@wsfirm.com
Email: andrea@wsfirm.com

ATTORNEYS FOR PLAINTIFF,
SOLAS OLED LTD.

**CERTIFICATE OF SERVICE**

I certify that on April 24, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3)(A).

*/s/ Neil A. Rubin*
Neil Rubin